UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTOPHER POWANDA,<br>    *Plaintiff*,<br>    v.<br>INTEPLAST GROUP, LTD., L.P., *el al.*,<br>    *Defendants*. | Civil No. 3:14cv846 (JBA)<br><br>April 2, 2015 |

**RULING ON DEFENDANTS' MOTION TO DISMISS**

Defendants Inteplast Group, LTD., LP ("Inteplast") and Formosa Plastics Corporation, U.S.A. ("Formosa") move [Doc. # 32] to dismiss Plaintiff Christopher Powanda's Second Amended Complaint [Doc. # 37] as untimely and for failure to state a claim. For the reasons that follow, Defendants' Motion is granted in part and denied in part.

**I.     Facts Alleged**[1]

Plaintiff Christopher Powanda alleges that in March 2010, representatives of Defendants contacted him to inquire if he would be interested in joining them as an employee. (2d Am. Compl. ¶ 15.) At the time, Mr. Powanda was employed by CPG International/Azek Building Products ("Azek"), earning approximately $125,000 per year. (*Id.* ¶ 16.) In negotiations with representatives of Inteplast and Formosa, including

---

[1] Plaintiff filed the Second Amended Complaint on October 16, 2014 after Defendants filed this Motion and without indication that it was done "with the opposing party's written consent or the court's leave" as required by Fed. R. Civ. P. 15(a)(2). However, Defendants' reply brief acknowledging and responding to the Second Amended Complaint does not contest the propriety of its filing. Thus, Defendants have impliedly consented to this amendment. *See* 6 Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1490 (3d ed.) ("[T]he court may decide that an amended complaint has been consented to if defendant interposes a motion to dismiss based on both the original and the amended complaint.").

Jackson Chen and Y.L. Chang, Plaintiff agreed to a compensation package that included a base salary of $80,000 per year, a car allowance of $650 per month, a $150 per month allowance for phone and internet, and reimbursement for reasonable and necessary business-related expenses. (*Id.* ¶ 18.) Mr. Powanda also negotiated a commission schedule of 2% for orders he brought in by himself in Rhode Island, Connecticut, New York, New Jersey and Eastern Pennsylvania. (*Id.* ¶ 19.)

Based upon his experience and extensive contacts within the industry, Mr. Powanda believed that he could quickly bring in a multi-million dollar account to Defendants and thus during negotiations over his employment terms, he "specifically asked" Mr. Chen "if Defendants would be comfortable paying him a $200,000 commission over and above his salary." (*Id.* ¶ 21.) Mr. Chen "replied that, if Powanda brought in such an account, Defendants would make so much money that they would happily pay him such a commission." (*Id.* ¶ 23.)

Mr. Powanda alleges that this statement "was false, Chen knew that it was false when he made it, and it was made solely to induce Powanda to leave his then-current employment with Azek and come to work for Defendants." (*Id.* ¶ 23.) On April 22, 2010, in reliance on Defendants' false representations, Mr. Powanda entered into an employment contract with Defendants, which he would not have done otherwise. (*Id.* ¶¶ 24–25.)

In May 2010, Mr. Powanda initiated discussions with CEVN Corporation ("CEVN"), which in June 2010 resulted in Defendants signing a licensing agreement with CEVN and a sales agreement with the Wolf Organization under which Defendants agreed to manufacture CEVN's products for sale to Wolf. (*Id.* ¶¶ 26–33.) On the same day that Defendants signed the agreement with Wolf, Mr. Chen emailed Mr. Powanda to inform

him that Defendants were "unilaterally reducing his commission on the Wolf account from 2% to 1%" and Plaintiff was told to agree to this reduction or "he would be unemployed." (*Id.* ¶¶ 34–35.)

In September 2010, Defendants entered into a second sales agreement with Wolf for a different product manufactured by Defendants.  In the same month, Mr. Powanda obtained for Defendants a sales agreement with Primesource for distribution of TUF Board brand products in the New England region.  Mr. Chen told Plaintiff that he could not have two accounts in the region and forced him to pick between the Primesource and Wolf accounts, both of which would pay a 2% commission.  Based on this representation, Mr. Powanda decided to keep the Wolf account.  However, in October 2010, Defendants reduced Mr. Powanda's commission on the Wolf account to 0.5% and again told him that if he did not agree to the commission reduction "he would no longer be employed." (*Id.* ¶¶ 36–44.)

On October 25, 2010, Powanda sent an email to Messrs. Chang and Chen, stating that he expected them to honor his original 2% commission deal.  (*Id.* ¶ 45.)  On December 20, 2010 Powanda met with Martin Hass, at the time Formosa's Director of Human Resources, about his compensation and was told that the matter was "out of his hands." (*Id.* ¶¶ 48–49.)  In August 2013, Defendants stopped reimbursing Mr. Powanda's business expenses and his allowances for his car and phone/internet.  (*Id.* ¶ 51.) Throughout the course of his employment, Mr. Powanda "repeatedly asked" for sales reports and/or commission statements in order to verify that he was receiving commissions on sales to Wolf, but Defendants refused to provide this information and "[u]pon information and belief, Defendants failed to pay Powanda commissions on all sales to the Wolf Organization, even under the reduced commission rates." (*Id.* ¶¶ 52–

3

54.) On February 14, 2014, Powanda resigned from his employment with Defendants. (*Id.* ¶ 55.)[2]

## II. Discussion[3]

### A. Breach of Contract and Connecticut Minimum Wage Act (Counts One and Two)

#### 1. Statute of Limitations[4]

Defendants contend that Plaintiff's claims for breach of contract and a CMWA violation are both barred by the two-year statute of limitations because he was informed in October 2010 that his monthly commission for the Wolf account would be lowered, but did not commence this action until May 2014, more than three years later. Plaintiff

---

[2] Plaintiff alleges breach of contract (Count One); violation of the Connecticut Minimum Wage Act ("CMWA"), Conn. Gen. Stat. § 31-72 (Count Two); and fraud in the inducement (Count Three). Plaintiff filed this case in state court and Defendants removed the action to this Court. Jurisdiction in this Court is proper based upon diversity of citizenship, *see* 28 U.S.C. § 1332(a), and because Defendants' Notice of Removal [Doc. # 1] asserts that the value of Plaintiff's claims exceeds $75,000 (*id.* ¶ 10). *See* 28 U.S.C. § 1446(c)(2)(A)("[T]he notice of removal may assert the amount in controversy if the initial pleading seeks . . . (ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded.").

[3] To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Detailed allegations are not required but a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (alterations in original).

[4] "Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989).

does not dispute that the applicable statute of limitations for both claims is governed by Conn. Gen. Stat. § 52-596, which provides that "[n]o action for the payment of remuneration for employment payable periodically shall be brought but within two years after the right of action accrues"[5] but maintains that his claims are timely, because like a claim under the Fair Labor Standards Act ("FLSA"), his "cause of action for failure to pay wages accrued with each paycheck." (Pl.'s Opp'n [Doc. # 36] at 6.)

However, Plaintiff does not cite any case in which a court has accepted such an interpretation and to the contrary, the statute of limitations under § 52-596 begins "to run, i.e. the cause of action accrue[s], at the beginning of the period when wages [are] withheld from the plaintiff." *Brule v. Nerac Corp.*, 2009 Conn. Super. LEXIS 3365, at *21 (Conn. Super. Ct. Dec. 9, 2009) (Shapiro, J.); *see also Warzecha v. Nutmeg Companies, Inc.*, 48 F. Supp. 2d 151, 158 (D. Conn. 1999) ("For purposes of section 52–596, a cause of action for payment of remuneration for employment accrues when an employer refuses to compensate an employee according to the terms of an express or implied employment contract."). Therefore, Plaintiff's claim for unpaid wages from prior to October 16, 2012 is dismissed.

Inteplast further contends that the statute of limitations acts as "a complete bar" rather than "a two-year look-back" and thus Plaintiff should not be permitted to recover for unpaid wages within the limitations period. (Reply [Doc. # 38] at 4.) While

---

[5] Plaintiff's contract with Inteplast (the "Employment Agreement," Ex. B to Wang Aff. [Doc. # 32-3]) provided that Plaintiff's commissions "shall be calculated monthly" and "shall be paid by the 15th of the following month" (*id.* App'x C at 2), and thus the commissions were "payable periodically," a prerequisite for the limitations period of § 52-596 to apply. *Cf. Cooper v. PSI Grp., Inc.*, 364 F. App'x 681, 682 (2d Cir. 2010) (holding that § 52-596 does not apply where there is "no contractual provision that specifies or requires that . . . commission payments be made on any periodic schedule").

Defendant is correct that Plaintiff cannot recover unpaid wages outside the limitations period, the fact that some claims are untimely does not preclude Plaintiff from recovering for that portion of the claim that is timely, because where "repeated events give rise to discrete injuries, as in suits for lost wages" a plaintiff can recover for those portions of the unpaid wages within the limitations period. *Watts v. Chittenden*, 301 Conn. 575, 588 (2011) (internal quotation marks omitted); *see also Pollis v. New Sch. for Soc. Research*, 132 F.3d 115, 119 (2d Cir. 1997) (holding that recovery under the Equal Pay Act for timely and untimely claims "should have been limited to damages incurred within the three-year limitations period" but not barred entirely).

Plaintiff's claim for nonpayment of his car and phone/internet allowances and reimbursement of business-related expenses are also not time-barred.  Both of these payments are alleged to have been denied in August 2013 (Am. Compl. ¶¶ 50–51) and thus even if the two-year statute of limitations applies, this claim would be timely.[6]

    2.    *Failure to State a Claim*

Defendants contend that even if not time-barred, Mr. Powanda's breach of contract and CMWA claims fail as a matter of law the Employment Agreement gave

---

[6] The Employment Agreement does not specify a schedule for payment of allowances and expenses.  (*See* Employment Agreement, App'x C at 2.)  Although the parties do not address whether § 52-596 applies nor whether the claims for unpaid allowances and expenses constitute "wages" under the CMWA, Conn. Gen. Stat. § 31-71a(3), the contractually mandated payment of expenses can be recovered under a breach of contract theory where the applicable statute of limitations is six years.  *See Ziotas v. Reardon Law Firm, P.C.*, 296 Conn. 579, 592 (2010) ("[W]e do not agree that *all* contractually based compensation . . . constitutes wages under § 31–71a(3)."); *Ass'n Res., Inc. v. Wall*, 298 Conn. 145, 176 n.31 (2010) ("[A]n employee is not precluded from collecting a bonus that is contractually mandated, but indefinite in amount, under a breach of contract theory, despite the lack of relief available for such a bonus under the wage statutes."); Conn. Gen. Stat. § 52-576(a).

Inteplast the sole discretion to modify Mr. Powanda's compensation and Mr. Powanda continued to work for and receive income from Inteplast after it reduced his commission. (Employment Agreement, App'x C at 1; Reply [Doc. # 38] at 3.)  Defendants also contend that because the Employment Agreement provided that Plaintiff's employment was "at will" and it thus "had the power, *a fortiori*, to revise his commissions."  (Def.'s Mem. Supp. [Doc. # 32-1] at 12.).

The Employment Agreement provides that Plaintiff's employment was "at will," meaning that both Plaintiff and Inteplast "retain the right to terminate this employment relationship at any time and for any reasons." (Employment Agreement at 1.)  Appendix C to the Employment Agreement outlined Mr. Powanda's salary and commission payments of 2% in Northeast region and provided that it "may be modified by the Company, at the sole discretion of the Company, at any time in writing, dated and signed by the Company, and promptly forwarded to the Key Account Sales Manager." (*Id.*)

Defendants maintain that Plaintiff cannot state a valid claim for breach of contract or underpayment of wages where, as here, the relevant employment contract provides the employer with discretion to modify Plaintiff's salary.[7]  Plaintiff did not respond to this argument in his opposition brief, but at oral argument maintained that the Employment Agreement does not permit Defendants to retroactively modify his compensation after it has been earned.  The Court agrees that Defendant's interpretation permitting retroactive reductions of commissions already earned would essentially render the contract illusory.

---

[7] Defendants acknowledged at oral argument that there are no allegations in the complaint to suggest that Plaintiff's compensation was modified in accordance with the provision requiring modification to be "in writing, dated and signed by the Company, and promptly forwarded to the Key Account Sales Manager" (Employment Agreement, App'x C at 1), but as they noted, nor are there any allegations that this requirement was not satisfied.

"One of the most common types of promise that is too indefinite for legal enforcement is the promise where the promisor retains an unlimited right to decide later the nature or extent of his or her performance. This unlimited choice in effect destroys the promise and makes it illusory." 1 *Williston on Contracts* § 4:27 (4th ed.).[8]

*Quiello v. Reward Network Establishment Servs., Inc.*, 420 F. Supp. 2d 23, 27 (D. Conn. 2006) presented similar circumstances where employer RNI relied on a provision in an employment contract with plaintiff employee Quiello, providing that RNI "may, at its discretion and without notice, change: your pay." RNI claimed that this provision allowed it to retroactively reduce a commission already earned. In rejecting RNI's interpretation, the court explained that "if RNI was able to change the commission rate on a contract previously procured by Quiello, i.e. for which Quiello has already performed his consideration, then RNI effectively made no binding promise to Quiello in exchange for his work" and "there is no restriction, either express or implied, that would render RNI's 'promise' to pay future commissions for work already performed non-illusory." *Id.* at 31. Likewise Inteplast's interpretation of the Employment Agreement would render it illusory and thus it cannot be interpreted to allow retroactive modification of compensation, allowances, and reimbursements already accrued.

Plaintiff further alleges that "[u]pon information and belief, Defendants failed to pay Powanda commissions on all sales to the Wolf Organization, even under the reduced commission rates." (2d Am. Compl. ¶ 54.) However, as Defendants note, Plaintiff does

---

[8] "[W]here possible, courts will imply a limited obligation of good faith or reasonableness in the exercise of such discretion to avoid an illusory promise," *Sadowski v. Dell Computer Corp.*, 268 F. Supp. 2d 129, 136 (D. Conn. 2003), but even if the Employment Agreement is read to allow good faith retroactive modification, there are no allegations in the complaint to suggest that Defendants exercised this option in good faith.

not provide any details about any sales to Wolf in support of this claim. Plaintiff responds that such "granular detail is not necessary to allege a plausible claim for failure to pay wages" and "there is a very simple reason why Powanda cannot allege with more specificity exactly on which sales Defendants failed to pay his full commission," which is that Defendants have refused to provide him with sales reports and/or commission statements "in order to verify that he was, in fact, receiving commissions on sales to Wolf." (Pl.'s Opp'n at 7.)

The Second Circuit has addressed the pleading standards for denial of wages and other compensation in the context of FMLA claims and has made clear that to survive a motion to dismiss greater specificity is required than bare-bones allegations of a wage violation. For example, in *Dejesus v. HF Mgmt. Servs., LLC*, it affirmed the dismissal of a FMLA claim where the plaintiff, who earned both wages and commissions, alleged only that "she worked more than forty hours per week during 'some or all weeks' of her employment" in violation of the FMLA overtime provisions and that "there were weeks in which she was paid for her overtime hours but in which [her employer] 'failed to include the commission payments in the calculation of [her] overtime pay.'" 726 F.3d 85, 86 (2d Cir. 2013). The Second Circuit held that the plaintiff failed to include sufficient factual content, because she "did not estimate her hours in any or all weeks or provide any other factual context or content" and "her complaint was devoid of any numbers to consider beyond those plucked from the statute." *Id.* at 89. The court noted that "[w]hatever the precise level of specificity that was required of the complaint, [the plaintiff] at least was

required to do more than repeat the language of the statute."[9]  *Id*.  Likewise, here Plaintiff has pled "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that "do not suffice" to state a claim.  *Iqbal*, 556 U.S. at 678.  Thus, Plaintiff's wage claim for the non-payment of unspecified commissions (*see* 2d Am. Compl. ¶ 54) is dismissed.

### B. Fraud in the Inducement (Count Three)

Plaintiff's claim for fraud in the inducement of his employment contract is subject to Connecticut's three year statute of limitations under Conn. Gen. Stat. § 52-577, which provides that no "action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."  Plaintiff does not dispute the applicability of this limitations period or that the alleged wrong occurred in April 2010 when he signed the Employment Agreement, more than three years before the complaint was filed, but contends that the limitations period was tolled by the continuing course of conduct

---

[9] *Dejesus* was the third in a trifecta of Second Circuit cases addressing the pleading standards for a FMLA claim.  *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) held that "in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."  The court observed that "[d]etermining whether a plausible claim has been pled is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*. (internal quotation marks omitted).  While the court did not hold that an approximation of overtime hours was a necessity in all cases, it stated that an approximation "may help draw a plaintiff's claim closer to plausibility."  *Id*. at 114 n.7.  In *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192 (2d Cir. 2013), the plaintiffs alleged uncompensated work during meal breaks, training sessions, and extra shift time as evidence of an overtime violation without demonstrating how these instances added up to forty or more hours in a given week and the Second Circuit therefore concluded that the allegations lacked the "specificity" required, because though they "raise[d] the possibility" of an overtime claim, "absent any allegation that Plaintiffs were scheduled to work forty hours in a given week," they did not state a plausible claim for relief.  *Id*. at 201.

doctrine because "there was a duty to pay him wages that remained in existence after commission of the original fraud." (Pl.'s Opp'n at 8–9.) However, Plaintiff does not allege either "a single event [which] gives rise to continuing injuries" or a "case in which a continuous series of events gives rise to a cumulative injury" to which the doctrine applies, *Heard v. Sheahan*, 253 F.3d 316, 320 (7th Cir. 2001), but rather a discrete fraudulent representation that was actionable once Plaintiff discovered it in October 2010 when the commission for the Wolf account was reduced despite the ongoing employment relationship, *see Pollis*, 132 F.3d at 119 ("The fact that it might have been awkward for Pollis to bring her suit against the New School while continuing to teach there is not a sufficient reason to exempt her from the statute of limitations."). Thus, Defendants' Motion to Dismiss is granted as to Count Three.

### C. Claims against Formosa

Finally, Formosa contends that the claims against it must be dismissed because Formosa and Inteplast have no parent-subsidiary relationship and are separate legal entities and the Employment Agreement was entered into by Plaintiff and Inteplast only. (Def.'s Mem. Supp. at 15.) Plaintiff contends that the "joint employer" test of the FLSA applies to his CMWA claim and that he has plausibly alleged that Formosa was his employer under this test. Although the CMWA "provides wage and overtime guarantees similar to the FLSA," *Scott v. Aetna Servs. Inc.*, 210 F.R.D. 261, 263 n.2 (D. Conn. 2002), the Connecticut Supreme Court has declined to adopt the FLSA joint employer analysis for CMWA claims. *See Butler v. Hartford Technical Inst.*, 243 Conn. 454, 462 n.8 (1997). Instead, Connecticut courts consider factors such as whether the alleged employer set the hours of employment, paid wages, exercised control over day–to–day responsibilities, or ran other daily operations. *See id.* at 464–65; *see also Petronella ex rel. Maiorano v. Venture Partners, Ltd.*, 60 Conn. App. 205, 211–12 (2000).

Plaintiff has plausibly alleged facts from which it could be inferred that Formosa exercised sufficient control over Plaintiff or his employment to suggest that it was his employer under the CMWA. The Second Amended Complaint alleges that Defendants "are part of a single integrated enterprise" in that that Formosa "closely directs the operations of Inteplast," that Defendants "share common management," "a single human resources department, operated by Formosa, and Inteplast clears all major employment decisions with Formosa." (2d. Am. Compl. ¶¶ 8–12.) While Formosa contends that Plaintiff has not stated any factual content in support of these allegations, Plaintiff alleges that he met with Martin Hass, Formosa's Director of Human Resources, about his compensation and that his exit interview was conducted by another Formosa employee.

12

(*Id.* ¶¶ 48–49, 56.)  These meetings between Mr. Powanda and Formosa's human resources department plausibly suggest that Formosa may have exercised control over Mr. Powanda's employment such that it could be considered his employer.  Whether in fact Formosa will ultimately meet the employer test will require the development of a factual record.

As to the breach of contract claim, the Employment Agreement was executed only by Mr. Powanda and Inteplast and Plaintiff's opposition brief does not address any basis for Formosa to be held liable under the contract, instead arguing only that "Formosa was an 'employer' pursuant to the CMWA." (Pl.'s Opp'n at 11.)  At oral argument, Plaintiff maintained that the joint employer test was equally applicable to a breach of contract claim, because the same policy considerations justify a broad application.  As discussed above, Connecticut courts have not adopted the FLSA joint employer test and Plaintiff has advanced no other theory for holding Formosa liable for a contract that it is not a signatory to, *cf. Seligson v. Brower*, 109 Conn. App. 749, 753 (2008) ("The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages."), nor any other persuasive justification for doing so.[10]  Therefore, the breach of contract claim against Formosa is dismissed.

### III. Conclusion

For the reasons set forth above, Defendants' Motion [Doc. # 32] to Dismiss is GRANTED in part as to Counts One and Two, the claims for unpaid commissions from prior to October 16, 2012, and DENIED as to the claims for commissions from after

---

[10] At oral argument, Plaintiff clarified that he does not rely on a veil piercing theory to hold Formosa liable for the contract executed by Inteplast.

October 16, 2012 and as to all claims for unpaid allowances and expenses; GRANTED as to Count Three in its entirety; and DENIED as to the wage claims against Formosa and GRANTED as to the contract claim against Formosa.

                          IT IS SO ORDERED.

                          /s/
                          Janet Bond Arterton, U.S.D.J.

        Dated at New Haven, Connecticut this 2nd day of April, 2015.