UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTOPHER POWANDA,<br>    *Plaintiff*,<br>    *v.*<br>INTEPLAST GROUP, LTD., L.P., *el al.*,<br>    *Defendants*. | Civil No. 3:14cv846 (JBA)<br><br>July 6, 2015 |

**RULING ON DEFENDANTS' MOTION FOR RECONSIDERATION**

Defendants Inteplast Group, LTD., LP and Formosa Plastics Corporation, U.S.A. move [Doc. # 42] for partial reconsideration of the Court's Ruling on Defendants' Motion to Dismiss [Doc. # 41] (the "Ruling") to the extent that it concluded that Plaintiff's claims under the Connecticut Wage Payment Act, Conn. Gen. Stat. § 31-72, were only partially time-barred and that Plaintiff could pursue claims for underpaid wages for two years prior to the date his suit was filed. For the reasons that follow, Defendants' motion is granted for clarification but denied as to any substantive change.

**I.    Background**

The allegations of Plaintiff Christopher Powanda's Second Amended Complaint [Doc. # 37], filed on October 16, 2014, are set forth in detail in the Ruling denying Defendants' Motion to Dismiss and are incorporated by reference here. (Ruling at 1–4.) Briefly, Plaintiff alleges that starting in October 2010, Defendants started underpaying him commissions that he was owed as part of his salary. In its Ruling, the Court held that

Plaintiff's wage claims were time-barred except for wages claimed from the two-year period immediately preceding the initiation of this lawsuit.[1] (*Id.* at 5.)

Defendants now contend that the Court erred in not dismissing Plaintiff's wage claims in their entirety and that the Court should adopt the "single accrual view" under which "a plaintiff is barred from bringing *all claims* for lost wages two years after the employer *first informs* the employee of the refusal to pay." (Mem. Supp. Reconsideration [Doc. # 42-1] at 3 (emphasis in original).) They contend that the Ruling appeared to "initially adopt[] the single accrual view of § 52-596 but allow[ed] Plaintiff's post-October 16, 2012 claims to go forward anyway" and in doing so "may have inadvertently applied" the "multiple accrual view" under which "a separate cause of action accrues under § 52-596 with each deficient paycheck." (*Id.* at 4–5.) While the Court will clarify its reasoning on reconsideration, the result will remain unchanged.

---

[1] Under the Connecticut wage statute, the term "wages" is defined as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation." Conn. Gen. Stat. § 31-71a(3). The parties are in agreement that the applicable statute of limitations for Plaintiff's claim for unpaid commissions is Conn. Gen. Stat. § 52-596, which provides that "[n]o action for the payment of remuneration for employment payable periodically shall be brought but within two years after the right of action accrues."

**II.     Discussion[2]**

In this diversity case, the statute of limitations and its accrual are governed by state law. *See Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002). In the absence of binding precedent from the Connecticut Supreme Court to date, this Court must "'predict how the state's highest court would resolve' any identified uncertainty or ambiguity" as to when a claim, as alleged here, accrues for repeated wage violations under § 52-596. *Avedisian v. Quinnipiac Univ.*, 387 F. App'x 59, 60 (2d Cir. 2010) (quoting *Santalucia v. Sebright Transp., Inc.*, 232 F.3d 293, 297 (2d Cir. 2000)).

"Where there is 'no decision by the state's highest court then federal authorities must apply what they find to be the state law after giving proper regard to relevant rulings of other courts of the State.'" *Travelers Ins. Co. v. 633 Third Associates*, 14 F.3d 114, 119 (2d Cir. 1994) (quoting *Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456,

---

[2] Motions for reconsideration require the movant to set "forth concisely the matters or controlling decisions which [the movant] believes the Court overlooked in the initial decision or order." D. Conn. L. Civ. R. 7(c)1. The Second Circuit has explained that "[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18B C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 4478). This standard is "strict," however, and reconsideration should be granted only if "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). If "the moving party seeks solely to relitigate an issue already decided," the court should deny the motion for reconsideration and adhere to its prior decision. *Id.* "Alternatively, the Court can grant a motion [for reconsideration] for the limited purposes of considering the effect of an overlooked matter, and after doing so may affirm and/or clarify the original decision." *Dietrich v. Bauer,* 198 F.R.D. 397, 399 (S.D.N.Y. 2001) (internal quotation marks omitted).

465 (1967) (alterations omitted)). However, "while the decrees of lower state courts should be attributed some weight[,] the decision is not controlling where the highest court of the State has not spoken on the point" but rather "is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."[3] *Estate of Bosch*, 387 U.S. at 465 (internal quotation marks and alterations omitted).

Neither party draws the Court's attention to, nor is the Court aware of, any controlling precedent from the Connecticut Supreme Court on the issue of whether the single or multiple accrual rule applies where an employer repeatedly fails to pay an employee's periodic compensation. The only appellate court decision cited by Defendants in support of their position (*see* Reply Mem. Supp. Mot. Dismiss [Doc. # 38] at 4) is *Burns v. Koellmer*, 11 Conn. App. 375, 377 (1987), in which the plaintiff worked as a manager at a club for six years during which time she was underpaid, but "the defendant represented that she would be fully compensated in the future." The "plaintiff's expectation of payment ceased when her employment did" and one month after being terminated she brought a claim for six years of underpaid wages. *Id.* The Appellate Court rejected the defendant's argument that her claims were time-barred under § 52-596, holding that the "plaintiff's cause of action did not arise in this case until the defendant breached the

---

[3] Other resources available for this Court's prediction include "the statutory language, pertinent legislative history, the statutory scheme set in historical context, how the statute can be woven into the state law with the least distortion of the total fabric, state decisional law, federal cases which construe the state statute, scholarly works and any other reliable data tending to indicate how the [Connecticut Supreme Court] would resolve the issue." *Travelers Ins. Co.*, 14 F.3d at 119 (internal quotations marks and alterations omitted)).

agreement by refusing to fully compensate the plaintiff for her services." *Id.* at 388–89 (citing *Anderson v. Zweigbaum*, 150 Conn. 478, 481 (1963) and *Appeal of Beardsley*, 83 Conn. 34, 37–38 (1910)). Because the plaintiff agreed to defer payment of her wages during her employment, the employment agreement was breached just once—at the time of her termination.[4] Thus, *Burns* had no occasion to address the application of the statute of limitations where repeated breaches were claimed.

In the absence of any relevant guidance from the lower appellate courts in Connecticut, this Court predicts that the Connecticut Supreme Court would apply the general rule of contract law that where a contract requires repeated performance a cause of action accrues with each successive breach of the contract. *See* 10-53 Corbin on Contracts § 53.14 ("There are contracts . . . that have been said to require continuing (or continuous) performance for some specified period of time, a period that may be definite

---

[4] The two cases relied upon by the Appellate Court in *Burns* make clear that it was analyzed as a claim for a single breach of an employment agreement. In *Anderson*, the plaintiff worked as a housekeeper for seven years and agreed not to collect wages until the death of her employer. 150 Conn. at 480. The Connecticut Supreme Court held that the wage claims were not time-barred because the agreement "precluded the plaintiff from claiming wages prior to [the employer's] death and therefore prevented the Statute of Limitations from commencing to run against her claim until its accrual at that time." *Id.* The same result was reached in *Appeal of Beardsley* under similar facts. *See* 83 Conn. 34 ("No right of action, therefore, of any kind, by the Schempps against Miss Coffey, existed during her lifetime. Upon her death a right of action arose . . . .").

or indefinite when the contract is made. These contracts, too, are capable of a series of 'partial' breaches . . . . For each 'partial' breach a separate action is maintainable . . . .").[5]

This general rule is also applied to claims under the Fair Labor Standards Act ("FLSA") and the Connecticut Supreme Court's "interpretation of the [Wage Act] is aided by federal precedent respecting the meaning and scope of . . . analogous federal" provisions. *Roto-Rooter Servs. Co. v. Dep't of Labor*, 219 Conn. 520, 528 n.8 (1991).[6] "Courts have held that for the purposes of establishing the statute of limitations under the FLSA, a new cause of action accrues with each payday following an allegedly unlawful pay period." *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 199 (S.D.N.Y. 2006) (collecting cases); *see also Knight v. Columbus, Ga.*, 19 F.3d 579, 582 (11th Cir. 1994) ("[The plaintiffs] have a non-barred cause of action with respect to any claims (i.e., any paychecks which omitted pay for overtime worked) that accrued within two years . . . of the date the complaint was filed."); *Halferty v. Pulse Drug Co.*, 821 F.2d 261, 271 (5th Cir. 1987) ("A cause of action accrues at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed. . . . Halferty filed her complaint on December 10, 1984. Therefore, Halferty should have been able to recover damages for any violation of the FLSA for . . . the two-year period of December 10, 1982, to December 10, 1984 . . . ."). In

---

[5] The Wage Act's regulations regarding when employees must be paid requires repeated performance by employers and is thus susceptible to multiple partial breaches. *See, e.g.,* Conn. Gen. Stat. § 31-71b(a)(1) ("[A]n employer, shall pay weekly all moneys due each employee on a regular pay day, designated in advance by the employer . . . .").

[6] Like Conn. Gen. Stat. § 52-596, the FLSA provides that an action must be "commenced within two years after the cause of action accrued," 29 U.S.C. § 255(a), without specifying when accrual occurs.

light of the above reasoning, this Court concludes that the Connecticut Supreme Court would adopt the multiple accrual rule and allow Plaintiff to pursue wage claims for the two-year period prior to the filing of his complaint.

Defendants maintain, however, that "[e]very Connecticut court which has considered the question has applied the single accrual rule to § 52-596's statute of limitations" and thus "this Court should follow the interpretation that has been unanimously adopted by Connecticut's lower courts." (Defs.' Mem. Supp. at 5.) To support their position Defendants cite two unpublished decisions from the Connecticut Superior Court and one federal district court case, none of which squarely address the circumstances presented here—whether the single or multiple accrual rules should apply to a claim for repeated non-payment of wages due. *See Warzecha v. Nutmeg Companies, Inc.*, 48 F. Supp. 2d 151, 158 (D. Conn. 1999); *Brule v. Nerac Corp.*, No. HHDCVX04085023811S, 2009 WL 5322206, at *8 (Conn. Super. Ct. Dec. 9, 2009); *Williams v. Cushman & Wakefield of Connecticut, Inc.*, No. CV 95-0148747 S, 1998 WL 246493, at *1 (Conn. Super. Ct. May 5, 1998).

Relying on the Appellate Court's decision in *Burns* as authority, *Warzecha*, *Brule*, and *Williams* each apply the single accrual view to claims for repeated wage violations, but they do not provide any analysis as to why *Burns*, which involved just a single breach of an employment contract, would apply to a claim for repeated wage violations. *See Warzecha*, 48 F. Supp. 2d at 158; *Brule*, 2009 WL 5322206, at *7; *Williams*, 1998 WL 246493, at *1. In the absence of any such analysis, this Court does not believe that the

Connecticut Supreme Court would be persuaded by these cases to adopt the single accrual rule advocated by Defendants in this case.[7] *See Estate of Bosch*, 387 U.S. at 465.

With this added explanation of its reasoning, the Court adheres to its prior conclusion that a separate claim under the Wage Act accrues with each instance in which Plaintiff allegedly was underpaid and thus he can recover damages for unpaid wages for the two-year period prior to when this action was initiated.

## III.    Conclusion

Defendants' Motion [Doc. # 42] for Reconsideration is GRANTED only for purposes of clarifying this Court's previous opinion and is otherwise DENIED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 6th day of July, 2015.

---

[7] Plaintiff calls attention (Pl.'s Opp'n to Recon. [Doc. # 48] at 2) to *Comm'r of Labor v. Tomborello*, as supporting the multiple accrual rule by concluding that "non payment of wages is a continuing matter" and a claim for unpaid wages accrued on the "last date of association" of the employer and employee such that even claimed wages outside the limitations period were timely. No. CV92 29 55 87 S, 1993 WL 394474, at *5 (Conn. Super. Ct. Sept. 22, 1993). This conclusion was reached without analysis and does not aid this Court in predicting how the Connecticut Supreme Court would rule.